UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-43-REW |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| MARTI PAYNE, | ) | |
| | ) | |
| Defendant. | | |

*** *** *** ***

In July 2018, the Court sentenced Defendant to a 160-month term of imprisonment for her participation in a methamphetamine trafficking conspiracy. DE 354. On August 27, 2020, Payne, now an inmate at FCI Tallahassee, filed a *pro se* motion seeking compassionate release pursuant to 18 U.S.C. § 3582. DE 523 (Motion). The Court, having denied two earlier compassionate release requests from Payne for failure to show exhaustion of administrative remedies,[1] found that this

---

[1] A minority of courts has waived the exhaustion requirement for compassionate release motions that are based on inmates' particular vulnerability to COVID-19. *See, e.g.*, *United States v. Zukerman*, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) (holding that "exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in [that defendant's] unique circumstances—by the COVID-19 pandemic"); *United States v. Colvin*, No. 3:19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); *United States v. Russo*, No. 16-CR-441, 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020) (same). Courts in this particular District have expressly or implicitly declined such an approach. *See, e.g.*, *United States v. Cornett*, No. CR 7:10-2-KKC, 2020 WL 1912211, at *2 (E.D. Ky. Apr. 20, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important."); *accord United States v. McCann*, No. CR 5:13-52, 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) (same); *see also United States v. Girod*, No. CR 5:15-087-DCR, 2020 WL 1931242, at *3 (E.D. Ky. Apr. 21, 2020) (rejecting the defendant's compassionate release request where "there [was] no indication that he pursued, let alone exhausted, his administrative remedies with respect to this claim"). Many other courts, in this Circuit and others, have reached like conclusions. *See United States v. Edwards*, No. 3:13-CR-00012-1, 2020 WL 1987288, at *11 (M.D. Tenn. Apr. 27, 2020) ("sid[ing] with the other district judges within this Circuit, as well as numerous other like-minded judges across the nation[,]" and rejecting an unexhausted

1

third attempt properly satisfied § 3582's statutory gateway requirements and ordered the Government to respond to the merits of the request. DE 524. The Government opposed Payne's request. DE 526. Payne replied to that response. DE 528. The matter, now fully briefed, is ripe for review.

I.  **LEGAL BACKGROUND**

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

---

compassionate release request during the COVID-19 pandemic) (collecting cases). The Third Circuit (the only one to substantively address this novel issue) suggested that exhaustion is key, even in the COVID age. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that the defendant's failure to exhaust, or wait 30 days, "present[ed] a glaring roadblock foreclosing compassionate release"); *id.* at 597 ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."). The reasoning of the bulk of courts in this District and Circuit, consistent with that in *Raia*, is persuasive. Waiver of the exhaustion requirement, which is unexcepted and unqualified in the statute, based merely on COVID-19 rests on a legally tenuous foundation. *Cf. Marlowe v. LeBlanc*, No. 20-30276, 2020 WL 2043425, at *3 (5th Cir. Apr. 27, 2020) (assigning error to trial court's excusing of plaintiff's failure to exhaust administrative remedies under the PLRA during pandemic); *see also id.* at *4 (Higginson, J., concurring in the judgment solely on non-exhaustion grounds).

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[2] By separate statute, Congress explicitly directed the United States Sentencing Commission to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18").

To that end, the Commission issued a policy statement, USSG § 1B1.13, authorizing, in relevant part, a reduction if "[e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community . . . ; and [t]he reduction is consistent with this policy statement." Per the Application Notes to § 1B1.13, extraordinary and compelling reasons exist if:[3]

> (A) . . . (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[; or]
>
>> (ii) The defendant is . . . suffering from a serious physical or medical condition, . . . functional or cognitive impairment, or [ ] experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.[4]

---

[2] This is a provision Congress recently broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

[3] Though at least one court has determined that USSG § 1B1.13 is not, in its current form, a "policy statement applicable to motions for compassionate release filed by defendants under the First Step Act." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). However, Congress passed the FSA with § 1B1.13 (and § 994) as a backdrop. *See United States v. Karr*, No. 6:17-CR-25-REW, 2020 WL 774363, at *3 n.12. The Court logically references the extant version of the Policy Statement on compassionate release as an "applicable" policy statement. 18 U.S.C. § 3582(c)(1)(A).

[4] The Court declines substantive discussion of plainly inapplicable options premised on a defendant's age, *see id.* at App. Note 1(B) (requiring a defendant "at least 65 years old"), or family circumstances—*see id.* at App. Note 1(C) (triggered by "death or incapacitation of" a defendant's

3

>   (C) . . . (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.
>
>   (D) As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [previously] described[.]

The Court's discretion in granting early release is limited to what is allowed by § 3582 and the Sentencing Guidelines. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). In any § 3582 action the defendant, as the movant, bears the burden of establishing eligibility for a reduction in her sentence. *Id*.

## II.   PAYNE DOES NOT SATISFY THE REQUIREMENTS FOR RELEASE

Payne's request for release cites the "unprecedented threat of Covid-19" which "could not have been foreseen at sentencing and poses extraordinary risks to the defendant's health."[5] DE 523. In making her argument, Payne largely references COVID-19 risks generally applicable to her detention facility, although she also writes that a heart condition and hepatitis C make her

---

spouse, registered partner, or the caregiver of a defendant's minor child). Payne's family-exigency argument, involving her stepfather, is not within this provision.

[5] To the Court, it is worth isolating the particular "reason" that Payne claims is an extraordinary and compelling release basis. Whether released or incarcerated, Payne may face sharpened risks if she contracts COVID-19. Such static factors cannot, themselves, plausibly justify a sentence reduction. The BOP's COVID site indicates that FCI Tallahassee currently has 11 infections out of a total inmate population of 847. Every single COVID-19 diagnosis inside a prison is a serious matter that must be addressed swiftly and effectively. But that ratio (well below the Kentucky positivity rate) does not, at present, suggest a basis for release under § 3582. The entire country has struggled to contain COVID-19. *See* https://covid.cdc.gov/covid-data-tracker/#cases (reporting 7,129,313 U.S. cases as of 9/29/2020). Regardless of whether Payne remains in prison, or is released, she will continue to be at risk of contracting COVID-19, as all are.

uniquely vulnerable to the virus. DE 523 at 23. In a separate line of argument, she states that early release is proper because she is needed at home to care for her stepfather. *Id.* On review, the Court finds that neither Payne's current health issues nor her need to care for her stepfather constitutes a valid basis for early release under § 3582(c)(1)(A).

First, Payne's hepatitis C is considered "resolved" by the BOP. DE 526 at 8. Second, her heart condition, as described in the record, is not of sufficient severity to qualify for early release. U.S.S.G. § 1B1.13 cmt. 1(A)(i)("Examples [of qualifying illnesses] include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."). The heart and related concerns may be chronic; they are not, in the formulation that governs, terminal. Further, she shows no self-care limitations within the guidelines' meaning. Finally, Payne's request for early release to care for her stepfather is outside the scope of what is described in the guidelines. Early release to care for another is proper only, as relevant, if the defendant is released to care for her minor child, minor children, partner, or spouse. U.S.S.G. § 1B1.13 cmt. n.1(C). The Court does not consider Payne to meet the § 3582 triggering requisites.

Even if the Court were to find Payne's reasons for release "extraordinary and compelling," relief would still require a determination that early release is appropriate in light of the sentencing "factors set forth in § 18 U.S.C. §3553(a)" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §1B1.13. Defendant does not meet either of these requirements.

§ 3553(a)(2)(A) requires that "the sentence imposed reflect the seriousness of the offense, [] promote respect for the law and [] provide just punishment for the offense." Payne here seeks early relief from a 160-month prison sentence imposed barely two years ago, in July of 2018. DE 354. The length of her sentence reflects the gravity of the offense: 5-15 kg meth trafficking. DE

341. Release, at this stage and in these circumstances, would enervate these significant and motivating sentencing purposes. Payne's original guideline range (built largely on quantity of meth and her Category IV criminal history) was at 262 months, and the Court ultimately departed and/or varied down to 160 months. Her crime calls for service of the time imposed. Release, if granted, would reduce Payne's original sentence by approximately 85%. Such a significant reduction would not properly honor the purposes and factors outlined in § 3553(a).

Payne's sought relief is similarly inconsistent with the standards of § 3142(g), which requires a safety calculus. Payne deserves credit for the positive strides made during her incarceration. DE 523-1 ¶ 4. But the Court must also consider her request in light of an extensive criminal history. When it does so, the balance of factors again weighs against early release. Payne had three guilty pleas in the three years preceding her arrest for methamphetamine trafficking: theft (PSR ¶ 53), receipt of stolen property (PSR ¶ 54), and felony drug possession. PSR ¶ 55, DE 352. At the time she was trafficking drugs, she was under conditional discharge for one of those offenses and probation for another. PSR ¶ 57. She well earned the category IV designation. Given the significant amount of criminal activity committed in a relatively short window of time, and Payne's history of criminality while under supervised release, the Court finds early release inconsistent with the requirements of § 3142(g).

### III. CONCLUSION

In the colloquial sense, the COVID-19 pandemic surely presents extraordinary and compelling concerns for incarcerated individuals. However, neither this Court's unguided interpretation of "extraordinary" or "compelling" reasons, nor the protean nature of common parlance decides the case-critical question. "A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). And,

Congress chose to vest the Sentencing Commission with the authority to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t). The legislature reinforced this lexicographic authorization by expressly conditioning district court authority under § 3582(c)(1)(A) on a finding that any reduction be consistent with the Commission's policy statements.[6]

Here, Payne's motion hinges on the potentially dire consequences of an illness that she has not contracted. A reduction based on risks associated with an eventuality that remains entirely speculative would not square with § 1B1.13. Nor would granting Payne early release to care for her stepfather. She simply does not fit within the limits of the exception § 3582 creates.

Finding the statutory requirements unsatisfied, the Court declines the sought relief.

This the 2nd day of October 2020.

Signed By:
Robert E. Wier   REW
United States District Judge

---

[6] Of course, if it so chooses, Congress may withdraw, circumscribe, or circumvent the authority it has vested in the Commission. Indeed, pending proposed legislation would explicitly deem the fact that a defendant is, "according to guidance from the Centers for Disease Control and Prevention, considered to be at a higher risk for severe illness from COVID-19, including because the defendant is 60 years of age or older or has an underlying medical condition," an "extraordinary and compelling reason under" § 3582(c)(1)(A)(i). 2019 Cong US S 4034 (June 22, 2020); *see also* 166 Cong. Rec. S4592-02, S4593 (July 29, 2020) (adding, as cosponsors, Senators Whitehouse, Wicker, Coons, and Tillis). Yet, the proposed legislation, for now, remains just that. It is the law on the books that binds this Court.